■ BANK OF TOKYO-MITSUBISHI TRUST COMPANY et al., Respondents, and URBAN FOOD MALLS, LTD., Intervenor-Respondent, v CAISSE NATIONALE DE CREDIT AGRICOLE, Appellant. [694 NYS2d 380] —Order and judgment (one paper), Supreme Court, New York County (Herman Cahn, J.), entered October 14, 1998, which denied defendant's motions for summary judgment and a preliminary injunction, granted plaintiff's cross motion for summary judgment, and declared that plaintiff Bank of Tokyo-Mitsubishi Trust Company had authority pur-

suant to an Interbank Agreement between plaintiff and defendant, dated December 9, 1987, to enter into a Settlement Agreement, dated December 31, 1996, with intervenor-plaintiff The Urban Food Malls, Ltd., among others, unanimously affirmed, with costs and disbursements.

Plaintiff and defendant are banks that provided a credit facility to intervenor-plaintiff The Urban Food Malls, Ltd. (Food Malls). The banks' rights and obligations among themselves were governed by an Interbank Agreement dated December 9, 1987. Plaintiff Bank of Tokyo-Mitsubishi Trust Company (Bank of Tokyo) acted as agent for the other banks in connection with the credit facility pursuant to the Interbank Agreement. It had authority under this agreement to enter into a Settlement Agreement dated December 31, 1996 with Food Malls and its affiliates, based on the consent of a majority-in-interest of the participating banks. Defendant Caisse Nationale de Credit Agricole (Credit Agricole) held a 33.33% interest in the credit facility. It was the sole objectant to the Settlement Agreement. It contended that, in entering into the Settlement Agreement and a subsequent sale of the credit facility documents to a buyer pursuant thereto, Bank of Tokyo "forg[a]ve * * * indebtedness" within the meaning of the Interbank Agreement for which the consent of *all* participating banks was required.

However, we agree with the IAS Court's declaration that Bank of Tokyo had the authority to enter into the Settlement Agreement on the ground that, even if unanimous consent *were* required, the Interbank Agreement forbade participating banks from "unreasonably withhold[ing]" their consent to proposed transactions. There was no commercially reasonable basis for Credit Agricole's refusal to consent to the Settlement Agreement and subsequent sale of the credit facility documents. Thus, the banks stood to realize total consideration of at least $68 million from the sale pursuant to the Settlement Agreement, while the appraisal of the mortgaged properties securing the debt valued such properties at $62.9 million, and the highest offer for the credit facility documents received by the banks prior to the execution of the Settlement Agreement was $55 million. Indeed, an executive of Credit Agricole, in seeking the preliminary injunction against consummation of the transaction, represented to the Supreme Court that the value that might be realized from the mortgaged assets in foreclosure or bankruptcy could not be reliably determined. The fact that Food Malls's appraiser valued the mortgaged properties at $88.2 million did not become known to the banks until after the execution of the Settlement Agreement. Concur—Rosenberger, J. P., Nardelli, Williams and Rubin, JJ.